# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## December 11, 2013 Session

## MYRON JAY WILSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-68809      David M. Bragg, Judge**

---

**No. M2013-01284-CCA-R3-PC - Filed April 7, 2014**

---

The petitioner, Myron Jay Wilson, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel and that his guilty pleas were knowing and voluntary. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Paul Bruno (on appeal and at hearing) and Patrick Newsom (at hearing), Nashville, Tennessee, for the appellant, Myron Jay Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Laural A. Hemenway, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On January 4, 2012, the Rutherford County Grand Jury returned a two-count indictment charging the petitioner with aggravated sexual exploitation of a minor involving more than twenty-five images and sexual exploitation of a minor involving more than 100 images, both Class B felonies. On February 10, 2012, the petitioner pled guilty to two counts of attempted sexual exploitation of a minor, a Class C felony, in exchange for a Range I sentence of six years for each offense, to be served consecutively to each other. Pursuant to the terms of his negotiated plea agreement, the petitioner was ordered to serve thirty days in

confinement with the remainder of his time on supervised probation.  The State provided the following factual basis for the plea:

> The facts of this case are that a referral was received by the Murfreesboro Police Department regarding [the petitioner] being in possession of child pornography on his computer.  Upon responding to the residence, [the petitioner] signed a consent form for the examination of several items in his apartment.  He was subsequently interviewed and indicated that he may have had some . . . child pornography several years ago prior to this date, when he was in college.

> TBI examined all of the items, and they located 2,292 images and three videos that appeared to be child pornography.  And then on . . . further findings were over 4,000 images and three videos.

> . . . .

> On Count No. 1, he is charged with aggravated sexual exploitation of a minor.  He is pleading guilty to attempted sexual exploitation of a minor, over 100 images, would be a – this is a C felony, and the offense date on this would be from 2005 through 2007.  He would be sentenced as a standard, 30 percent offender, to six years in TDOC, and he would have six years suspended.

> . . . .

> On Count No. 2 he is also charged with sexual exploitation of a minor.  He's  pleading guilty to attempted sexual exploitation of a minor, over 100 images, and this would be for the offense date of 2008 through 2011.

On October 18, 2012, the petitioner filed a petition for post-conviction relief in which he raised claims of ineffective assistance of counsel and unknowing and involuntary guilty pleas.  Specifically, he alleged that he received ineffective assistance of counsel, thereby rendering his guilty pleas unknowing and involuntary, because counsel failed to hire a computer expert to review the hard drives involved in the case, failed to determine the dates of the alleged offenses, and misadvised the petitioner on the possible punishment he faced if convicted of the offenses.

At the evidentiary hearing, Jeffrey Tuley, an employee of NetEvidence, a computer forensic investigation company, testified that he examined the two hard drives associated

with the case and found that they contained approximately 40,000 general pornography images and 2,300 images of child pornography. He said he determined that the child pornography was placed on the hard drives in the year 2010. He found no evidence that any child pornography had been placed on the drives in any other year. He later reviewed an additional hard drive associated with the case, "[t]he actual system hard drive or the O.S. drive, which was the primary drive in the computer that the other drive came out of," but he found no child pornography on that drive. He said he reviewed the internet browsing history, user names, password logins, email addresses, and email activity and found no evidence that directly linked the child pornography on the hard drives to the petitioner or any other individual.

On cross-examination, Tuley testified that he checked a sample of approximately one dozen child pornography images and found that they were last accessed in 2010. He agreed that the images could have been there two or three years before and just been last accessed in the year 2010. On redirect examination, he testified that the "created written dates" of the images suggested that they were placed on the hard drives between June and November of 2010 and that he found nothing to indicate that the images were on the computer prior to those dates. On recross-examination, he agreed that it was possible that the files existed on another hard drive at an earlier time and were transferred to the current hard drive in 2010, testifying that the "created written date" would reflect the date on which the data was transferred. He did not, however, find any evidence to suggest that such a scenario took place.

The petitioner testified that he was arrested on January 5, 2012, and forced to remain in jail because he was unable to make the $200,000 bond that had been set. Prior to the instant case, he had never before been convicted of any offense. Counsel met with him twice at the jail and once in the courthouse on the day he entered his pleas. Counsel went over the elements of the offenses but never reviewed discovery with him. The petitioner said he asked counsel about hiring a computer expert to examine the hard drives, but counsel merely responded that he was "compiling as much information as he could" and would get back to him. The petitioner stated that counsel advised him he was facing a maximum sentence of "80 or so years" if convicted of the charged offenses at trial.

The petitioner testified that he told counsel he knew there were pornographic images on his computer but was unaware of any child pornography. During 2010, he shared an apartment with as many as four other individuals, including Ken Murkett, who was on the lease with him, Michael Christian, Harry Kirkland, Carlton Ray, and a "set of . . . French students from Korea." During that time, his computer was located in a central area of the apartment, was not password protected, and served "as a social server" on which the apartment residents could access movies, television shows, and music. Anyone could,

therefore, copy or remove content from the hard drives.

The petitioner testified that he entered his guilty pleas because counsel told him to do so. He also said that his inability to make bond influenced his decision to plead guilty. According to the petitioner, he told counsel about his roommates' access to his computer and asked if he had talked to any of them, but counsel never replied to his question. He stated that he never noticed any date of the offenses listed on the indictment and that counsel never told him the date the offenses were alleged to have occurred. Had he known that pornographic content was alleged to have been created in 2010, he would not have pled guilty because he would have known that other people had access to his computer during that time. Counsel, however, suggested that the State's evidence against him was overwhelming, telling him that there were five hard drives with "porn just slewed all the way across them" and that his "hands were tied" and the petitioner had no other alternative than to plead guilty.

The petitioner also claimed that trial counsel did not inform him of any of the specific consequences of his guilty pleas, including the details surrounding his placement on the sex offender registry. He said he did not learn those details of his sentences until after he had pled guilty and his probation officer reviewed with him the conditions of his probation. He testified that he was unaware that count one had an offense date of 2005 to 2007 and that he knew of no evidence that would prove that offense date.

On cross-examination, the petitioner acknowledged that he signed the plea agreement and the judgment forms, on which was listed the requirement that he be placed on the sexual offender registry. He further acknowledged that the dates of the offenses were read during the plea colloquy and that the trial court informed him of the conditions of his guilty pleas. He claimed, however, that trial counsel told him to "stick to the script" during his plea colloquy and not to ask the trial court any questions. He said that trial counsel told him he could "have an appeal on this matter" despite the fact that the trial court informed him that he was waiving his right to an appeal by pleading guilty. He stated that he did not recall having told the police investigator that he and his friends had exchanged pornographic images, including ones depicting bestiality and sex with children. Finally, he testified that, despite his earlier evidentiary hearing testimony, he could not recall having ever asked trial counsel to hire a computer expert or having had any conversation with counsel about an expert.

Trial counsel, who had been practicing criminal law since 2009, testified that the petitioner's mother initially contacted him about representing the petitioner on the case. In response, he went to the jail and met with the petitioner for about 35 to 45 minutes, where he reviewed the charges and discussed with the petitioner the elements of the offenses and possible defenses to the crimes. He then returned to his office, and the petitioner's parents

came back in to retain him and to pay his fee. Afterwards, he went back to the jail and held a more in-depth meeting with the petitioner. During that meeting, the petitioner informed him that when he was in college between 2000 and 2005 he and his friends engaged in a game in which they would "download the worst sort of porn" they could find onto each other's computers so that when the computer's owner sat down to turn on his computer, shocking pornographic images would pop onto the screen. Counsel said that he and the petitioner discussed subpoenaing the lease from the apartment complex where the petitioner had lived and attempting to locate the roommates with whom he had shared the apartment. In addition, he discussed with the petitioner how the State would put on an expert computer witness in an effort to prove the elements of the offenses and that they should counter with their own computer expert. Counsel stated that he informed the petitioner that he thought the State would have a difficult time proving all the elements of the offenses.

Trial counsel testified that during his review of discovery in the district attorney's office, the prosecutor offered a plea bargain that involved the petitioner's pleading guilty to two counts of attempt with four years at thirty percent, followed by six years on probation and ten years on the sex offender registry. Trial counsel said he then met with the petitioner a third time, where he discussed what he had reviewed in discovery and informed him of the State's plea offer. Counsel said that the petitioner was not interested in that plea bargain but wanted him to negotiate a deal that would secure his release from jail and not involve any additional time.

Trial counsel testified that he repeatedly informed the petitioner that any "time served" offer, which he referred to as a "sucker's deal," would involve a lot of probation. The petitioner, however, was insistent that he negotiate a deal, so he went back to the prosecutor and negotiated the deal to which the petitioner eventually pled guilty. Counsel testified that, throughout the process, he specifically discussed with the petitioner how he would be placed on the sex offender registry and the onerous conditions that it would entail:

> And most importantly – and I didn't mention this before. But at all three of these meetings, we talked about the sex offender registry. Any time that there's a charge like this, we're always dealing with the sex offender registry just because of the – basically how much trouble it is, and how much trouble you can get in if you don't keep up with it.
>
> So, what I told him was that if he's on this – if he takes this, one of the things that he's going to be dealing with for a long period of time will be the sex offender registry. All right. And it can go as much as 10 years after his probation, and that he would have to try to get off of it on his own.

I mean, it would include quite a bit of work. And it would include a provision to keep him from . . . getting on really any computer other than a work computer. Okay.

And I told him that. He told me that he wanted to take [the] offer.

Trial counsel testified that he read the plea agreement aloud to the petitioner and discussed with him again what it involved, including his placement on the sex offender registry. He again referred to it as a "sucker's deal," telling the petitioner that it was not the best deal he could get and basically amounted to a "get out of jail offer." He also discussed the fact that the petitioner would most likely not be allowed to be around his girlfriend's minor children or any other minor children. The petitioner told him that he understood and that it was what he wanted to do.

Trial counsel testified that he gave the petitioner twenty minutes to think about it. When he came back, he went over the agreement with the petitioner again, including the requirements of probation and the psychosexual evaluation and counseling the petitioner would have to undergo, telling him that it would be "a pain" and that he would not like it. The petitioner, however, informed him that he still wanted to accept the plea agreement.

Trial counsel testified that when he first met with the petitioner, he told him that the way the statute reads, the grand jury "could have stacked these for each image." He never, however, told the petitioner that he was facing a potential sentence of eighty years and, after speaking with the prosecutor, he "made it very clear" to the petitioner that he was facing two Class B felonies, which carried a range of eight to thirty years for each. He said he did not prepare any "script" for the petitioner to follow during the plea colloquy and never told him that he could not ask questions of the trial court.

On cross-examination, trial counsel acknowledged that the petitioner had no prior convictions and would not, therefore, have received a thirty-year sentence for a Class B felony. He explained that his reference to thirty years was to the maximum sentence in the range for a Class B felony. He said that, after checking the petitioner's record, he probably informed him that he was facing a potential maximum sentence of eight years at thirty percent on each count. He could not, however, remember exactly what he told him about his potential maximum exposure although he was confident that he never told the petitioner that he was facing either eighty or sixty years in prison.

On April 30, 2013, the post-conviction court entered an order finding that the petitioner had failed to meet his burden of showing that counsel was deficient in his representation or that his guilty pleas were unknowing and involuntary. Accordingly, the

court denied the petition for post-conviction relief. This appeal followed.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The

-7-

prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The petitioner argues on appeal that he would have known that he had a defense to the crimes and would not therefore have pled guilty were it not for trial counsel's deficiencies in failing to hire a computer expert to determine the date the images were placed on his hard drives, in failing to file for a bill of particulars or otherwise determine the dates the offenses were alleged to have occurred, and in misadvising him on the maximum potential sentences he faced if convicted of the indicted offenses at trial. The petitioner further argues that his guilty pleas were involuntary because he did not understand the full nature and consequences of his pleas, including the conditions involved in being placed on the sex offender registry.

In denying the petition, the post-conviction court implicitly accredited the testimony of trial counsel regarding the number of discussions he had with the petitioner and the topics

they covered, including the need to hire a computer expert if they proceeded to trial, the range of punishment for the offenses, the requirements of the sex offender registry, the petitioner's desire to enter into a plea agreement in order to avoid more incarceration, and trial counsel's advice to the petitioner not to accept the State's plea offer. The court, thus, found that the petitioner failed to meet his burden of demonstrating that his counsel was deficient in any way or that any alleged deficiency prejudiced the petitioner's case.

As for the petitioner's claim that his pleas were unknowing and involuntary, the post-conviction court found, among other things, that the petitioner was able to read and write, that he was represented by competent counsel and had an opportunity to confer with counsel prior to entering his pleas, that he was actively listening and responding to the trial court during the plea colloquy and demonstrated on the record that he fully understood the pleas and their consequences, and that he entered the pleas against the advice of counsel in order to gain his release from jail.

The record fully supports the findings and conclusions of the post-conviction court. We conclude, therefore, that the evidence does not preponderate against the post-conviction court's findings that the petitioner received effective assistance of counsel and that his guilty pleas were knowingly and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to meet his burden of showing that he received ineffective assistance of counsel or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE